MEMORANDUM OPINION
 

 HOGAN, District Judge.
 

 Pending before the Court are Defendant’s Motion to Dismiss or Alternatively for Summary Judgment and Plaintiffs Cross Motion for Summary Judgment.
 

 Background
 

 In 1991, Plaintiff, an active duty physician, enrolled in graduate medical training as an orthopedic surgery resident at William Beaumont Army Medical Center CWBAMC”) and Texas Tech University Health Sciences Center (“Texas. Tech”), a joint military-civilian program located in El Paso, Texas. Plaintiff was a senior Major, who had already completed a Ph.D in anatomy.
 

 In April 1994, Plaintiff received notice that the teaching staff believed that he was “inept in the operation room,” far behind the- expected level of progress for a fourth year resident, and that he should consider another field of medicine outside of Orthopedics.
 
 See
 
 Administrative Record (“Admn.Rec.”) at 118-19, 137-45. Plaintiff also received a referred Officer Evaluation Report (“OER”) in 1994, reflecting the faculty’s concerns for his low testing scores and poor performance in the operating room.
 
 See
 
 Admn. Rec. at 160-62. Col. Thomas J. Scully, Chief of Orthopedic Surgery for the training program, counseled Plaintiff to withdraw from Orthopedics because of his “inadequate” performance in the “cognitive and psychomotor domains.”
 
 See
 
 Admn. Rec. at 188.
 

 In January 1995, Plaintiff was notified that he was being placed on probation for failure to meet academic and technical performance standards in accordance with the recommendation of the William Beaumont Army Medical Center Education Committee, in accordance with Army Regulation 351-3,¶ 6-5.
 
 See
 
 Admn. Rec. at 184-87. In August 1995, Plaintiff was non-selected a second time for promotion to Lieutenant Colonel.
 
 See
 
 Complaint at 4. He received regular reviews and counseling sessions about his continued inability to perform
 
 *5
 
 routine and complex surgical procedures independently.
 
 See
 
 Admn. Rec. at 192-247.
 

 During this period, members of the faculty recommended that Plaintiff be removed from his residency. Admn. Rec. at 248-61. However, the Education Committee recommended an extension of Plaintiffs probation status; this extension was approved on July 20, 1995. Admn. Rec. at 265-67. Plaintiff did not receive notice of the committee’s decision, and resigned in order to avoid being involuntarily terminated from the resident program. Admn. Rec. at 262-80;
 
 see also
 
 Complaint at Hit 9-10. In light of this miscommunication, the Hospital reinstated Plaintiff and placed him on probation again for the same technical deficiencies, as of January 2, 1996. Admn. Rec. at 281-82. The hospital also reduced him in his residency training program. Admn. Rec. at 289-305. Plaintiff still appeared to have difficulties in this program. Admn. Rec. at 306-30.
 

 On June 24, 1996, Dr. Copeland, the Orthopedic Surgery Program Director, recommended that Plaintiff be terminated from the orthopedic residency program based on his inability “to satisfactorily progress toward correction of deficiencies while on probation.” Admn. Rec. at 331-37. This recommendation was based on several evaluations which concluded that Plaintiff was unable to perform at the required level of expertise. Admn. Rec. at 306-30, 338-48. On July 3, 1996, the Graduate Medical Education Committee approved Dr. Copeland’s recommendation that Plaintiff be terminated from the residency training. Admn. Rec. at 356-58. Consequently, on July 8, 1996, the Commander of the hospital notified Plaintiff that he was terminated from his orthopedic residency. Admn. Rec. at 359-62, 366-70.
 

 The Army notified Plaintiff that he would be allowed to continue on active duty as part of a “selective continuation” program. Complaint at 11 32. The Army then reassigned him to duty at Fort Leavenworth, Kansas as the Chief of the General Outpatient Clinic. Complaint at H 31; Admn. Rec. at 32-35. For the stated reasons of budget constraints and Plaintiff’s failure to possess critical skills, the Army discharged Plaintiff from active duty on September 1, 1997. Complaint II 33; Admn. Rec. at 47.
 

 Plaintiff filed this action for declaratory judgment on September 17, 1998, seeking to overturn the Secretary of the Army’s decision to terminate Plaintiff from his graduate medical training as an orthopedic surgery resident. Plaintiff claims that the decision to terminate him from his graduate medical training was arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law and military regulation. Plaintiff seeks to have this Court order Defendant to expunge from Plaintiffs official personnel files all documents relating to Plaintiff’s orthopedic residency at WBAMC/Texas Tech Orthopedic Residency from 1991 to 1996, including but not limited to all Academic Evaluation Reports, termination proceedings from the residency, Plaintiff’s resulting reclassification back to a general medical officer, and entries or notices filed with the National Practitioner Data Bank and national residency and medical accreditation entities. Plaintiff also requests an award of attorneys’ fees.
 

 On August 20, 1999, Plaintiff filed a motion for leave to file an amended complaint, expressly waiving any claims for monetary damages. No opposition was ever filed. The Court granted this motion.
 

 Discussion
 

 I. Defendant’s Motion to Dismiss
 

 A.
 
 Subject Matter Jurisdiction
 

 Defendant claims that Plaintiff has failed to affirmatively plead and prove a sufficient basis for subject matter jurisdiction over any claims against the United States based on any violation of substantive right and a corresponding waiver of sovereign immunity. However, Plaintiff alleges violations of substantive and procedural due process and affirmatively states
 
 *6
 
 in his complaint that the Administrative Procedure Act (“APA”), 5 U.S.C. §§ 702 and 706(2)(A), serves as the basis for jurisdiction.
 
 See
 
 Complaint at 1. Moreover, Plaintiff has filed an amended complaint that expressly waives any monetary damage claims.
 
 See Dronenburg v. Zech,
 
 741 F.2d 1388, 1390 n. 2 (D.C.Cir.1984) (court retained jurisdiction after permitting amended complaint for injunctive and declaratory relief; plaintiff eliminated pay back “damages claim” limiting relief to setting aside his discharge and ordering reinstatement to active duty). However, Defendant claims that even Plaintiffs amended prayer for relief implicates a suit for backpay because Plaintiff seeks alteration of records, which documented the bases for Plaintiffs discharge; Defendant argues that if Plaintiff received this relief, he would then be entitled in a subsequent suit in the Court of Claims to backpay for the time he would have served had he not been terminated from duty early. However, even if granting this equitable relief could conceivably support a subsequent action for money before the Army or the Claims Court, this Court still retains jurisdiction.
 
 See Van Drasek v. Lehman,
 
 762 F.2d 1065, 1069 n. 4 (noting that after amended complaint, the district court had jurisdiction even though the same facts giving rise to the non-monetary claims would support an action for money in the Claims Court).
 

 B.
 
 Justiciability
 

 Defendant also argues that Plaintiffs claims, which address the administration of an academic program, the correction of military and civilian personnel records, the non-selection for promotion to lieutenant colonel, and retention on active duty, are non-justiciable in nature because they would require the Court to intervene in “discretionary military personnel matters.”
 
 See
 
 Defendant’s Opposition at 4-5.
 

 A court considering intervention into military matters must determine whether legitimate military ends are sought to be achieved by means designed to accommodate individual rights to an appropriate degree.
 
 Goldman v. Weinberger,
 
 475 U.S. 503, 506, 106 S.Ct. 1310, 89 L.Ed.2d 478 (1986). Plaintiffs initial claims for non-selection of promotion and for retention on active duty fall squarely within the realm of nonjusticiable military personnel decisions.
 
 Orloff v. Willoughby,
 
 345 U.S. 83, 93, 73 S.Ct. 534, 97 L.Ed, 842 (1953) (holding that assignment decisions in the military are “not within the power” of courts to review);
 
 see also Wilson v. Walker,
 
 777 F.2d 427 (8th Cir.1985) (no judicial review of disciplinary reassignment from flight duties);
 
 Schlanger v. United States,
 
 586 F.2d 667 (9th Cir.1978),
 
 cert. denied,
 
 441 U.S. 943, 99 S.Ct. 2161, 60 L.Ed.2d 1045 (1979) (no review of removal from commissioning program). However, the non-justiciable issues of the non-promotion and removal from active duty are not present in Plaintiffs amended complaint. Therefore, a motion to dismiss on these issues is now moot.
 

 Plaintiffs amended complaint contains more modest requests. These claims for declaratory relief, correction of his military records, and for attorneys’ fees require the Court merely to evaluate, in light of the principles of administrative law, the reasonableness of the Secretary’s actions with respect to the Plaintiff with regard to his period of probation. The claims in Plaintiffs amended complaint are justiciable.
 
 See Kreis v. Secretary of the Air Force,
 
 866 F.2d 1508, 1511-1512 (D.C.Cir.1989) (holding that although major’s claim for retroactive promotion was nonjusticiable military personnel decision, his alternative claims for correction of military records were justiciable). Although the claims in Plaintiffs amended complaint are justiciable, they are still subject to substantial deference. Therefore, this Court’s review of these claims is limited to whether the Defendant’s actions were “arbitrary, capricious, or contrary to the statutes and regulations governing that agency.”
 
 Id.
 
 at 1512;
 
 see also Wolfe v. Marsh,
 
 835 F.2d 354, 358 (D.C.Cir.1987).
 

 
 *7
 
 C.
 
 Exhaustion
 

 Defendant further contends that Plaintiff has not exhausted his administrative remedies with the Army Board for the Correction of Military Records (“BCMR”) and therefore should not be allowed to bring this suit in our Court. However, the U.S. Supreme Court has held that exhaustion of administrative remedies is not required prior to seeking judicial review under the APA, when neither the relevant statute nor agency rules specifically mandate exhaustion as a prerequisite to judicial review.
 
 Darby v. Cisneros,
 
 509 U.S. 137, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993). In
 
 Darby,
 
 the Supreme Court found that the APA, 5 U.S.C. § 704 (1988), “explicitly requires exhaustion of all intraagency appeals mandated either by statute or by agency rule,” but courts may not “require litigants to exhaust optional appeals as well.”
 
 Id.
 
 In this case, there is no exhaustion required by statute or by agency rule. Both the BCMR enabling statute and its implementing regulation are devoid of any language that mandates exhaustion of administrative remedies prior to judicial review. 10 U.S.C. § 1552; AR 15-185 (codified at 32 C.F.R. § 581.3). The relevant language under section 1552 states that the Secretary, acting through the BCMR, may correct any error or injustice. This language shows that administrative review is possible, but does not show that it is required.
 
 See Mobile Communications Corp. v. FCC,
 
 77 F.3d 1399, 1404 (D.C.Cir.1996),
 
 citing Darby,
 
 509 U.S. at 141-48, 113 S.Ct. 2589 (agency regulation specifying that party may obtain review of adverse agency action did not require exhaustion prior to judicial review within meaning of section 10(c) of the APA, 5 U.S.C. § 704).
 

 Since there is nothing in the statutes or regulation that expressly requires further administrative exhaustion prior to seeking judicial review, this Court cannot impose an exhaustion requirement in this case.
 
 See Darby,
 
 509 U.S. at 151-52, 113 S.Ct. 2539 (where agency decisions are final, courts are not free to require further exhaustion as a matter of judicial discretion).
 

 D.
 
 Conclusion
 

 For the foregoing reasons, this Court will deny Defendant’s motion to dismiss.
 

 II. Defendant’s Alternative Motion for Summary Judgment
 

 Defendant alternatively claims that he is entitled to summary judgment because (1) Defendant has violated no law or regulation in his dealings with Plaintiff and (2) Plaintiff has no constitutionally protected right to service as an orthopedic surgeon in the army.
 

 Judgment on the administrative record is appropriate if there is no genuine issue of material fact and if the Court finds that the Defendant is entitled to judgment as a matter of law.
 
 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986);
 
 Anderson v. Liberty Lobby, Inc., 477
 
 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). As mentioned above, judicial review in this case is limited to determining whether there has been substantial compliance with statutes and regulations, whether the agency acted arbitrarily and capriciously, and whether there is substantial evidence to support the agency’s decision.
 
 Kreis,
 
 866 F.2d at 1512;
 
 see also Wolfe,
 
 835 F.2d at 358.
 

 Army regulations provide that upon recommendation from the hospital education committee, the Medical Training Facility Commander (“MTF”) may place that trainee on probation. The MTF, or other individual, must notify the trainee of the probation and counsel him or her regarding the deficiencies requiring correction. Finally, the probationary period must be at least 30 days, provide the trainee with an opportunity to improve, and may be extended by majority vote of the hospital education committee. AR 351-3, 11 6-5d. Then, upon recommendation of the hospital education committee, the MTF may terminate a trainee for failure to correct
 
 *8
 
 the necessary deficiencies while on probation. AR 351-3,1Í 6-5e.
 

 Plaintiff claims that his termination was improper because the hospital did not allow him sufficient time to improve or correct his deficiencies and that therefore all documents relating to his orthopedic residency should be expunged from his record. Specifically, Plaintiff contends that since he prematurely resigned and thus suffered an approximate seven month absence from his studies, Defendant should have restarted his probation clock upon reinstatement and given him another year to complete his residency. However, these claims lack merit.
 

 Plaintiff was notified on January 20, 1995, that he was being placed on probation for 90 days. This probation followed several years of marginal evaluations and recommendations that he leave the field of orthopedic surgery. Plaintiff was given counseling and was told of the perceived deficiencies. While it is true that the education committee recommended on July 20, 1995, that Plaintiffs probationary period be extended nearly another full year and that Plaintiff may have submitted his resignation due to miscommunication on the part of the hospital, these actions were irrelevant to the terms of Plaintiffs probation. Plaintiff had no legal entitlement to twelve months of specific training upon probation. Plaintiffs termination does not appear to have been unfounded or without sufficient basis. The records shows numerous poor performance evaluations and reports from faculty that Plaintiff was not “making significant improvement” during his initial probation period of six months. Plaintiff clearly had the opportunity to correct his deficiencies on probation for more than the required minimum of 30 days. Therefore, this Court cannot find that Defendant acted arbitrarily or capriciously in terminating Plaintiff from the training program.
 

 Finally, Plaintiff has no due process right to practice medicine in the U.S. Army. While it is true that there is no right to change residency procedures without some due process, there was no material alteration to Plaintiffs probation terms in this case. Despite the fact that Defendant was only required to give 30 days probation, Plaintiff was originally given 90 days to rectify his poor performance; this 90-day probation period was later extended to six months, which was eventually extended to a year-and-a-half. The fact that Plaintiff suffered a lapse in his studies due to his premature resignation is not relevant to the terms of his probation and is not sufficient to show a denial of due process. Therefore, Plaintiff has suffered no impairment of his liberty interest in this case.
 

 Similarly, Plaintiff has suffered no loss of property because there is no protected property interest in continued military service.
 
 Guerra v. Scruggs,
 
 942 F.2d 270 (4th Cir.1991);
 
 see also Navas v. Vales,
 
 752 F.2d 765 (1st Cir.1985);
 
 Rich v. Secretary of the Army,
 
 735 F.2d 1220 (10th Cir.1984);
 
 Woodard v. Marsh,
 
 658 F.2d 989 (5th Cir.1981),
 
 cert. denied,
 
 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982);
 
 Ampleman v. Schlesinger,
 
 534 F.2d 825 (8th Cir.1976). This includes denials of reenlistment as well as discharges prior to the expiration of a term of service.
 
 Sims v. Fox,
 
 505 F.2d 857, 862 (5th Cir.1974),
 
 cert. denied,
 
 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 678 (1975). Here, Plaintiff claims an entitlement to continued service as a military orthopedic surgeon. However, Plaintiff has not pointed tb any statute, contract, or state-declared policy that would give him this property interest.
 
 See Perry v. Sindermann,
 
 408 U.S. 593, 603, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (holding that property rights in continued employment may be derived from statutes, from explicit contracts, or from state-declared policies but cannot emanate from “mere subjective expectancy.”);
 
 Board of Regents v. Roth,
 
 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (“Property interests ... are not created by the Con
 
 *9
 
 stitution.... [Tlhey are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....”). Plaintiff claims that his property rights emanate from “academic norms.” However, there is no evidence in the record to support this assertion. Moreover, the “academic norms” cited by Plaintiffs would require only a reasonable amount of time to correct the deficiency; based upon the administrative record, the Court finds there is more than sufficient evidence to conclude that this reasonableness requirement was met in this case.
 

 Therefore, Defendant’s motion for summary judgment will be granted and Plaintiffs cross-motion for summary judgment will be denied. An order will accompany this opinion.
 

 ORDER
 

 In accordance with the accompanying memorandum opinion, it is hereby
 

 ORDERED that Defendant’s Motion to Dismiss is denied. And it is further
 

 ORDERED that Defendant’s Alternative Motion for Summary Judgment is granted. And it is further
 

 ORDERED that Plaintiffs Cross Motion for Summary Judgment is denied. It is further
 

 ORDERED that this case is dismissed with prejudice.